## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## AND ARREST WARRANT

I, ███████, being first duly sworn, hereby depose and state as follows:

## PURPOSE OF AFFIDAVIT

1.      I make this affidavit in support of an application for an arrest warrant of CARLOS AYALA.

## AGENT BACKGROUND

2.      Your affiant, ███████, is a Special Agent assigned to the Federal Bureau of Investigation's ("FBI") Baltimore Field Office.  In my duties as a special agent, I investigate crimes of Domestic Terrorism. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021.  As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

3.      The facts of this affidavit come from my review of the evidence, my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses.  Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I have hearsay knowledge.  This affidavit merely intends to show that sufficient probable cause exists for the requested warrants and does not set forth all of my knowledge about this matter.

## FACTUAL BACKGROUND

4.      The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access

inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

5.      On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

6.      As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

7.      At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

8.      Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

9.      During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

## FACTS SUPPORTING PROBABLE CAUSE

10.      On or about January 12, 2021, the FBI learned through routine law enforcement liaison that AYALA was present at the United States Capitol on January 6, 2021, and took video of the events that day.  On or about January 13, 2021, the FBI received an anonymous tip that AYALA was inside and outside the Capitol Building on January 6th, and had worn a gas mask.

11.      On or about February 8, 2021, the FBI interviewed an individual who traveled to Washington, D.C. with AYALA ( "Witness 1").  Witness 1 stated that he took video footage on his own cellphone on January 6, 2021, and agreed to share that footage with the FBI.  Witness 1 was present on restricted Capitol grounds on January 6th, but after observing violent acts and destruction of property, Witness 1 departed the immediate vicinity of the Capitol Building.

12.      The FBI subsequently identified a phone number ending in 9999 ("Telephone Number 1"), which was associated with AYALA through Maryland state firearm registration records.

13.     According to search warrant returns from AT&T, on January 6, 2021, in and around the time of the riot at the United States Capitol, the cellphone associated with Telephone Number 1 utilized a cellsite providing service to the geographic area that included the interior of the U.S. Capitol Building.  That is, Telephone Number 1 was included in the geofencing data for the interior of the U.S. Capitol Building on January 6th.

14.     On or about March 19, 2021, the FBI interviewed Witness 1 a second time. Witness 1 confirmed again that he was initially present near the Capitol Building with AYALA, but after hearing loud sounds that may have been crowd control devices, Witness 1 departed the Capitol grounds.  At that point, Witness 1 clarified that he was no longer with AYALA, and that he last saw AYALA moving forward, up the stairs.  Witness 1 and AYALA were separated for approximately one hour.  Witness 1 also described the distinctive, hooded American-flag sweatshirt that AYALA wore on January 6th.  Witness 1 provided the same phone number for AYALA that the FBI had discerned through firearm registration information, that is Telephone Number 1.

15.     Your affiant reviewed the footage originally provided by Witness 1. The footage spans several hours on January 6, 2021.  In footage taken earlier in the day near the Washington Monument and en route to the U.S. Capitol, AYALA wore an American flag hooded sweatshirt and a cloth American-flag face mask.



*AYALA en route to U.S. Capitol Building*

16.     FBI obtained legal process on AYALA's Amazon account in connection with this investigation.  The American flag hooded sweatshirt that AYALA wore on January 6th appears to match an item purchased by AYALA on his Amazon account on December 20, 2020.

17.     Also included in Witness 1's footage is a video of AYALA running through the crowd gathered on restricted Capitol grounds near the scaffolding erected for the forthcoming inauguration.  The video shows that AYALA ran away from Witness 1 and another individual ("Witness 2"), who refers to AYALA by his first name in other parts of the footage.  According to Witness 1, Witness 2 is closely acquainted with Ayala.  In the background, rioters overran the police on the stairs adjacent to the scaffolding.  The crowd then cheered loudly and AYALA ran in the direction of the stairs, which rioters began using to gain access to the Upper West Terrace of the Capitol Building.



***AYALA running forward through crowd after police line breaks***

18.     In a video posted to Parler on or shortly after January 6, 2021, AYALA is depicted climbing police barriers, which were moved by rioters to access to the Upper West Terrace. According to the ProPublica site dedicated to the Capitol Riot, the footage was taken at approximately 2:16 p.m.



***AYALA climbing police barricade to access Capitol's Upper West Terrace***

19.     In Witness 1's footage from later in the day, AYALA's sweatshirt hood is cinched tightly around his head, and AYALA wearing a grey 3M-style painter's mask with large filters on each cheek.   AYALA carried a distinctive black and white flag bearing the words "We the People" and "DEFEND."   Featured prominently on the flag is an M-16 style rifle.   The flag was affixed to a PVC pipe flagpole.   AYALA wore a "Stop the Steal" button on his sweatshirt.


*Ayala on the Upper West Terrace*

20.     In Witness 1's video footage from the Upper West Terrace, Witness 1 and 2 refer to AYALA as "Carlos" and remark that he ran by them earlier.   Witness 1 also remarked, "Carlos, agreement that if we hear gunfire we'll run?"   AYALA responded, "Which way, towards or away?"   AYALA later stated, "Let's get up there" and picked up a piece of debris from the riots and commented that it may be part of a tear gas cannister.   That portion of the video also shows AYALA filmed the scene with his own cellphone.



*AYALA Filming with Cell Phone on Upper West Terrace*

21.    Subsequent footage from Witness 1 shows that AYALA moved toward the front of the crowd gathered outside the Senate Wing door of the Capitol.

22.    Closed Circuit Television (CCTV) footage from inside the U.S. Capitol, near the Senate Wing Door, depicts that AYALA waved his flag inside one of the windows next to the Senate Wing Door.  A U.S. Capitol Police ("USCP") officer motioned AYALA away from the window.  AYALA then moved toward the Senate Wing Door, which had been previously breached by rioters and where USCP erected a makeshift barricade.



*AYALA waving flag inside window near Senate Wing Door*

23.     The FBI interviewed multiple USCP officers who were positioned near the Senate Wing door at the same time as AYALA.  Officers described the rioters at the front of the crowd as aggressive, and said that many of the rioters at the front of the group appeared to instigate others to enter the building and confront officers.  Several rioters at the front of the mob threw objects at the officers.  Officers noted that rioters who were further back in the group appeared more passive, did not directly confront officers, and seemed to have more of a mob mentality and were following those who actively engaged the officers.



*USCP Officer pulls AYALA's flag into the building*

24.     One USCP officer ("Officer 1") described a specific event in which a rioter positioned to the right side of the Senate Wing Door, the same area where AYALA was present at approximately 2:41 p.m., jabbed a flag/flagpole at Officer 1.  Officer 1 grabbed the flagpole in an attempt to prevent the rioter from knocking Officer 1's shield away or injuring other officers. The flag is visible in CCTV footage and matches the description of AYALA's flag, which he was holding moments before.  AYALA was not visible on CCTV through the window between when he moved away from window adjacent to the Senate Wing Door, and when the altercation at the Senate Wing door occurred.



*PVC pipe after it is thrown at officers through open door*

25.     Less than 30 seconds after the altercation during which Officer 1 pulled

AYALA's flag into the Building, the Senate Wing door was breached by rioters and pulled open.

Within seconds of rioters opening the door, a PVC pipe with no flag attached was thrown

through the open door striking at least one officer. AYALA appeared to depart the area

immediately outside the Senate Wing Door at approximately 2:45pm.

26.     Body worn camera ("BWC") footage, from approximately 2:51 p.m. shows that

AYALA paced in front of officers who had assembled on the Upper West Terrace to clear rioters

from the area.  AYALA walked the length of the police line, gestured at the officers, and said,

"Join us!"



*AYALA encouraging officers to "Join us!"*

27.     Based on the foregoing, your affiant submits that there is probable cause to believe that CARLOS violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

28.     For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

29.     Your affiant submits there is also probable cause to believe that CARLOS AYALA violated 40 U.S.C. § 5104(e)(2)(D) and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive

conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede,

disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or

the orderly conduct in that building of a hearing before, or any deliberations of, a committee of

Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the

Capitol Buildings.

      30.    Finally, your affiant submits there is probable cause to believe that CARLOS

AYALA violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit

any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully

engaged in the lawful performance of his official duties incident to and during the commission of

a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or

the movement of any article or commodity in commerce or the conduct or performance of any

federally protected function. For purposes of Section 231 of Title 18, a federally protected

function means any function, operation, or action carried out, under the laws of the United

States, by any department, agency, or instrumentality of the United States or by an officer or

employee thereof. This includes the Joint Session of Congress where the Senate and House count

Electoral College votes.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone, this __8th__ day of January 2024.

_____
**HONORABLE ROBIN M. MERIWEATHER**
UNITED STATES MAGISTRATE JUDGE